STATE v. STEVENSON

[328 N.C. 542 (1991)]

Death sentence vacated; remanded for new capital sentencing proceeding.

STATE OF NORTH CAROLINA v. JAMES FREDERICK STEVENSON

No. 304A90

(Filed 3 April 1991)

### 1. Homicide § 21.5 (NCI3d) — first degree murder — sufficient evidence of premeditation and deliberation

The State's evidence of both premeditation and deliberation was sufficient to support defendant's conviction of first degree murder where it tended to show that the victim had a date with defendant's estranged wife and was at her trailer; defendant had previously threatened to kill a person with whom his wife was involved; defendant left work early the evening of the killing and went to his wife's trailer; defendant stopped 300 yards from the trailer at the home of a neighbor and learned that a truck was parked at his wife's trailer; defendant took a pistol from his truck and walked on foot to the trailer, leaving the driveway at some point and cutting through a field to avoid detection; defendant dropped his keys in the grass in order to avoid detection; defendant entered the trailer through the unlocked back door, checked the bedrooms, and heard his wife's voice down the hall; defendant waited in the back of the trailer for about an hour and then entered the living room, turned on a lamp, and said, "There ain't going to be no wedding"; defendant shot the unarmed victim as he attempted to get up from a reclining position on a couch; defendant then shot the victim three more times after the victim had been rendered helpless by the first shot; defendant threatened to kill his wife and then himself; defendant tried to think of ways to conceal his crime; defendant moved the victim's truck to conceal it; defendant fled the scene to avoid arrest; and there was no evidence of provocation in that defendant and his wife were legally separated and both the victim and the wife were fully clothed when the attack occurred.

**Am Jur 2d, Homicide § 439.**

STATE v. STEVENSON

[328 N.C. 542 (1991)]

2. **Homicide § 32.1 (NCI3d)— first degree murder—failure to submit voluntary manslaughter—harmless error**

Assuming *arguendo* that the evidence supported submission of voluntary manslaughter, the trial court's refusal to give defendant's requested instruction on voluntary manslaughter was harmless error where the court instructed the jury on first degree murder and the lesser offense of second degree murder and the jury returned a verdict of guilty of first degree murder.

**Am Jur 2d, Homicide § 530.**

3. **Criminal Law § 86.5 (NCI3d)— cross-examination of defendant—specific acts of misconduct—absence of plain error**

Assuming *arguendo* that the prosecutor's cross-examination of a defendant on trial for murder about his prior use of marijuana and prior assaultive conduct, neither of which resulted in criminal charges, violated Rule of Evidence 608(b) which limits impeachment by specific instances of conduct to those acts which are probative of truthfulness or untruthfulness, the error was not so prejudicial as to require the trial judge to intervene *ex mero motu* given the overwhelming evidence of defendant's guilt.

**Am Jur 2d, Witnesses §§ 524, 525.**

4. **Homicide § 25.2 (NCI3d)— first degree murder—deliberation—instruction on absence of passion**

The trial court in a first degree murder case did not err in instructing the jury that the State need not prove the absence of passion or emotion in order for the jury to find that defendant acted with deliberation. The trial court's failure to instruct on voluntary manslaughter did not render erroneous the court's instructions on premeditation and deliberation and lack of passion.

**Am Jur 2d, Homicide §§ 501, 525.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Ross, J.*, at the 26 February 1990 Criminal Session of Superior Court, WILKES County, upon a jury verdict of guilty of murder in the first degree. Heard in the Supreme Court on 11 March 1991.

*Lacy H. Thornburg, Attorney General, by John H. Watters, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Justice.

Defendant was tried in a non-capital fashion and was found guilty of the murder of Lonnie Dean Hall. From a sentence of life imprisonment, defendant appeals. We hold that defendant's trial was free of prejudicial error.

Defendant and Donna Hooker Stevenson were married in 1984 and legally separated in June 1989. Donna continued to live with their two children in their trailer, while defendant moved in with his brother. Their marriage was filled with violence and infidelity. In early June of 1989, defendant observed his wife and a black male, Darren Marsh, together at a park. When defendant approached them, Marsh began to run. Defendant ordered Marsh to stop and fired a shot into the ground with his gun. At home, defendant threatened to kill his wife unless she killed Marsh. He forced her to write a note confessing to the killing and gave her a gun to effectuate the crime. Donna Stevenson went to Marsh and warned him about defendant. She gave Marsh the gun and told him to forget about the incident.

Donna had known the victim, Lonnie Hall, all her life. On 1 August 1989, they had their second date. That evening, Donna's sister kept her two children; Donna was alone when Hall arrived at the trailer around 7:30 p.m. The pair watched a video which lasted about two hours. During the movie, Donna heard the dog barking and she went to the back door to investigate. She saw no one outside, but she locked the back door anyway. The front door was already locked. After the movie ended, Donna and Lonnie listened to the stereo until around 11:00 p.m., when Donna needed to get ready to go to work. At 11:15 p.m., Donna sat up on the couch where she and Hall had been reclining. At that time, defendant entered the room, turned on a lamp, and said, "There ain't going to be no wedding." He shot Lonnie Hall in the chest as Hall attempted to get up. He fired three more times in rapid succession, hitting Hall in the chest and arms. Defendant turned to Donna and threatened to shoot her next. However, he changed his mind and asked her what he should do. He then threatened

## STATE v. STEVENSON

[328 N.C. 542 (1991)]

to shoot himself, but Donna talked him out of it. Defendant suggested several ways to dispose of the victim's body, but Donna told him he should get some money from his brother and escape to Mexico.

Defendant gave Donna his .38 caliber pistol, which she unloaded and locked in the trunk of her car. Donna drove defendant to his truck which was parked at a neighbor's house. He instructed her to follow him in her vehicle to his brother's. She complied for a time, but then pulled off the road. Defendant did likewise and asked her if the victim was the Sheriff's brother. She lied to him and responded negatively. Donna pulled back onto the road in the opposite direction of which they had been driving. Defendant followed her until she pulled into the Elkin Police Department and went inside.

Defendant testified that he routinely stopped by his wife's trailer in the evenings to make sure she was awake and ready to go to work. On the evening of 1 August, he arrived at his neighbor's around 10:00 p.m. and walked to his trailer shortly thereafter. He did not know who owned the truck parked in the driveway, but believed that Darren Marsh was the man with his wife. He testified that he found the back door unlocked and he dropped his keys in the grass. When he entered the trailer, he heard voices and music on the radio. He heard Donna say, "I'm going to have them play that song at our wedding." Other evidence pertinent to this appeal will be discussed below.

[1] Defendant's first assignment of error alleges that the trial court erred in denying defendant's motion to dismiss the charge of murder in the first degree because the evidence was insufficient to prove deliberation. In reviewing the denial of a motion to dismiss for the sufficiency of the evidence, we must view the evidence in the light most favorable to the State, drawing all reasonable inferences therefrom. *E.g., State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). Substantial evidence must exist for every element of murder in the first degree in order to take the case to the jury. *E.g., State v. Smith*, 300 N.C. 71, 265 S.E.2d 164 (1980). "Substantial evidence" is that amount that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 78-79, 265 S.E.2d at 169 (citations omitted).

> Deliberation means an intent to kill carried out by the defendant in a cool state of blood in furtherance of a fixed design

for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.

*State v. Gladden*, 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986) (citation omitted). Defendant contends that the evidence in this case did not allow a reasonable inference of deliberation indicating a specific intent to kill. We disagree.

Taken in the light most favorable to the State, the evidence shows the following:

(1) That defendant previously threatened to kill a person with whom his wife was involved.

(2) That the defendant left work early that evening claiming to be sick and went to his wife's trailer.

(3) That defendant stopped 300 yards from the trailer at the home of a neighbor, learned from this neighbor that a truck had pulled up at his wife's earlier and had not left.

(4) That defendant took his pistol from his truck and walked on foot to the trailer, leaving the driveway at some point and cutting through a field to avoid detection.

(5) That defendant dropped his keys in the grass in order to avoid detection.

(6) That defendant found the back door unlocked, entered, checked the bedrooms, and heard Donna's voice down the hall.

(7) That defendant waited in the back of the trailer for some length of time; eventually entered the living room; turned on the light; said, "There ain't going to be no wedding"; and three to five seconds later, shot Lonnie Hall four times in the chest and arms.

(8) That defendant threatened to kill his wife and then himself.

(9) That defendant tried to think of ways to conceal his crime.

(10) That defendant moved the victim's truck to conceal it.

(11) That defendant fled the scene to avoid arrest.

From this evidence, a reasonable juror could conclude that defendant premeditated *and* deliberated his crime. From Donna's testimony that she heard noises in the back over an hour before

the shooting and that she then locked the back door, the jury could conclude that defendant concealed himself in the trailer for a sufficient period to deliberate his actions. Moreover, defendant shot Hall while he was in a vulnerable position, unarmed and reclining upon a couch. Defendant's argument of provocation is without merit. Defendant and his wife were legally separated and both the victim and Donna were fully clothed when the attack occurred. Defendant did not find them in a sexually compromising position.

Defendant's reliance upon *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981), is misplaced. In *Corn* the victim entered defendant's house in an intoxicated state and argued with defendant. The victim provoked defendant by accusing him of being a homosexual. Corn also knew that the victim had a history of violence when intoxicated. The Court held that the State failed to show premeditation and deliberation, because the shooting was a sudden event, brought on, at least in part, by provocation from the victim. There was no previous history of violence or ill will between Corn and the victim, and defendant did not use excessive force or inflict lethal blows after the victim was felled. *Id.* We agree with the State that the instant case is distinguishable on its facts. The evidence recited above reveals that defendant waited in the trailer for about an hour before attacking the victim; this was no sudden attack provoked by the victim. Moreover, defendant shot the victim three times after the victim had been rendered helpless by the first shot. Accordingly, we overrule this assignment of error.

[2] We next examine the issue of whether the trial court erred in refusing to give defendant's requested instruction on voluntary manslaughter. This Court has already reconciled this issue contrary to defendant's contention. *State v. Judge*, 308 N.C. 658, 303 S.E.2d 817 (1983). Here, the court instructed the jury on murder in the first degree and murder in the second degree. Assuming *arguendo* that the evidence supported submission of voluntary manslaughter, failure to submit was not prejudicial error. *Id.* Jurors had the opportunity to convict on the lesser offense of murder in the second degree. "That they did not indicates their certainty of [defendant's] guilt of the greater offense." *State v. Freeman*, 275 N.C. 662, 668, 170 S.E.2d 461, 465 (1969). We hold that the court's failure to submit voluntary manslaughter was not prejudicial error.

[3] In defendant's third assignment of error he alleges that the trial court committed plain error in failing to prohibit the cross-

examination of the defendant regarding prior conduct. The plain error rule is applied only in rare cases where the error was so fundamental that it had a probable impact on the jury's verdict. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). Defendant contends that the prosecutor's questions on cross-examination regarding prior use of marijuana and prior assaultive conduct, neither of which were the subjects of criminal charges, were so prejudicial as to amount to plain error. The first exchange which defendant assigns as error was as follows:

Q: Now, as a matter of fact, this is the way you normally settled your arguments, wasn't it, with a firearm?

A: No, sir.

Q: In January of '88, didn't you shoot Mark McCain, your [sic], husband of your girl friend, in the leg?

A: Mark McCain shot hisself.

Q: Oh, he shot hisself?

A: Yes, sir.

The second exchange occurred after the prosecutor asked defendant if he had been drinking or taking drugs the night of the shooting. Defendant responded negatively to both questions. The prosecutor continued:

Q: You indicated that the last time you'd had any marijuana was about a year ago?

A: Yeah, and I just took a draw [sic] then.

Defendant argues that these questions violated Rule 608(b) of the North Carolina Rules of Evidence which limits impeachment by specific instances of conduct to those acts which are probative of truthfulness or untruthfulness. N.C.G.S. § 8C-1, Rule 608(b) (1988). He contends that the evidence concerning a "draw" of marijuana and the prior shooting was so prejudicial that justice cannot have been done. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378. Assuming *arguendo* that the questions asked of defendant were erroneous, we hold that the error was not so prejudicial as to require the judge to intervene *ex mero motu*. *See id.* Given the overwhelming evidence of defendant's guilt, it is not probable that the jury would have returned a different verdict if the evidence had been excluded. N.C.G.S. § 15A-1443(a) (1988).

[4] Defendant's final assignment of error alleges that the trial court committed plain error in instructing the jury that the State need not prove the absence of passion in order to convict the defendant of murder in the first degree. Defendant argues that, given the amount of evidence relative to heat of passion and provocation, the instruction given misled the jury and distorted the law. This led to a diminution of the State's burden of proof on malice, by not requiring proof that defendant did not act in the heat of passion and by implying that emotion or passion was irrelevant to the charge on murder in the first degree. Defendant failed to object to this instruction at trial, thus necessitating the application of the plain error standard. *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375.

The trial judge instructed the jury as follows:

Fifth, the State must prove beyond a reasonable doubt that the Defendant acted with deliberation, which means that he acted while he was in a cool state of mind.

This does not mean that there had to be a total absence of passion or emotion if the intent to kill was formed with a fixed purpose, not under influence of some suddenly aroused violent passion. It is immaterial that Defendant was in a state of passion or excited . . . when the intent was carried into effect.

This instruction is in accord with the pattern jury instruction. *See* N.C.P.I.—Crim. 206.13. Defendant argues that when the jury is instructed on deliberation in conformity with the pattern instruction *and* a subsequent instruction on voluntary manslaughter is given, the language is not misleading to the jury and there is no error. The pattern instruction on voluntary manslaughter clarifies the relevance of passion and emotion and explains the State's burden of disproving heat of passion.

The State argues, and we agree, that the instruction given was a correct statement of law on deliberation. *See, e.g., State v. Faust*, 254 N.C. 101, 118 S.E.2d 769, *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961). The instruction adequately explains that the killing need not have been committed with a complete lack of emotion; such a killing would be a rare one indeed. Furthermore, we find no unconstitutional burden shifting, such as that disapproved of in *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed. 2d 344 (1985), and *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39

(1979). These cases involve the establishment of a mandatory presumption that relieved the prosecution of its burden of proving every element of the offense beyond a reasonable doubt. *Id.* We reject defendant's argument that the trial court's failure to submit voluntary manslaughter to the jury in some way rendered erroneous the court's instructions on premeditation and deliberation and lack of passion. Defendant has failed to show error, much less prejudicial error. This assignment of error is overruled.

We hold that in defendant's trial there was

No error.